UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SONYA LUTRICE BUCHANAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:14-cv-02030 |
| v. ) | Judge Sharp |
| ) | Magistrate Judge Frensley |
| NANCY BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OF OPINION

Pending before the Court is Plaintiff Sonya Lutrice Buchanan's ("Buchanan") Motion for Judgment on the Administrative Record ("Motion") (Doc. No. 15), filed with a Memorandum in Support (Doc. No. 15-1). Defendant Commissioner of Social Security ("Commissioner") filed a Response in Opposition to Buchanan's Motion. (Docket No. 16.) Upon consideration of the parties' filings and the transcript of the administrative record (Doc. No. 11),[1] and for the reasons given below, the Court will **GRANT** the Motion and **REMAND** the case pursuant to sentence four of 42 U.S.C. § 405(g) to ensure that Buchanan's cervical degenerative disc disease and mental impairments are properly considered in conjunction with her other impairments in determining whether she had sufficient RFC to perform substantial gainful activity.

### I. Introduction

On April 13, 2010 Buchanan filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act, alleging a disability onset of September 26, 2009 (the "alleged onset

---

[1] Referenced hereinafter by page number(s) following the abbreviation "A.R."

date"). (A.R. 138–52.) Buchanan's claim was denied at the initial and reconsideration stages of state agency review. (Id. at 69–73.) Buchanan subsequently requested *de novo* review of his case by an Administrative Law Judge ("ALJ"). (Id. at 91–92.) The ALJ heard the case on March 5, 2013, when Buchanan appeared, was represented by an attorney, and gave testimony. (Id. at 54.) Testimony was also received from an impartial vocational expert. At the conclusion of the hearing, the matter was taken under advisement until May 14, 2013, when the ALJ issued a written decision finding Buchanan not disabled. (Id. at 11.) That decision contains the following enumerated findings:

1. Buchanan meets the insured status requirements of the Social Security Act through December 31, 2014.

2. Buchanan has not engaged in substantial gainful activity since the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

3. Buchanan has the following severe impairments: obesity, pseudo-seizure disorder, and essential hypertension with resultant headaches (20 C.F.R. 404.1520(c) and 416.920(c)).

4. Buchanan does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. Buchanan has no physical limitations to the residual functional capacity ("RFC") to perform work a full range of work at all exertional levels but with the following nonexertional limitations: no exposure to heights or hazardous activities, and no driving. .

6. Buchanan can perform past relevant work as a medical billing clerk, school cafeteria worker, cashier, and child care attendant. This work does not require the performance of work-related activities precluded by her RFC (20 C.F.R. 404-1565 and 416.965).

7. Buchanan has not been under a disability within the meaning of the Social Security Act from the alleged onset date through the date of this decision (20 C.F.R. 404.1520(f) and 416.920(f)).

(Id. at 42–49.)

On August 22, 2014, the Appeals Council denied Buchanan's request for review of the ALJ's decision, thereby rendering that decision the final decision of the SSA. (Id. at 1.) This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. Review of Record

The Court adopts the summary of Buchanan's medical records from the ALJ's decision. (A.R. 16–23.)

## III. Conclusions of Law

### A. Standard of Review

This Court reviews the final decision of the SSA to determine whether substantial evidence supports that agency's findings and whether it applied the correct legal standards. Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 833 (6th Cir. 2016). Substantial evidence means "'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the agency's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." Brooks v. Comm'r of Soc. Sec., 531 F. App'x 636, 641 (6th Cir. 2013) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). The agency's decision must stand if substantial evidence supports it, even if the record contains evidence supporting the opposite conclusion. See Hernandez v. Comm'r of Soc. Sec., 644 F. App'x 468, 473 (6th Cir. 2016 (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).

Accordingly, this Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (quoting Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Where, however, an ALJ

fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." Miller, 811 F.3d at 833 (quoting Gentry v. Comm'r of Soc. Sec., 741 F.3d 708, 722 (6th Cir. 2014)).

**B. Five-Step Inquiry**

The claimant bears the ultimate burden of establishing entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). The SSA considers a claimant's case under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

1. A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. A claimant who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart B of the Regulations. Claimants with lesser impairments proceed to step four.

4. A claimant who can perform work that he has done in the past will not be found to be disabled.

5. If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

4

Parks v. Soc. Sec. Admin., 413 F. App'x 856, 862 (6th Cir. 2011) (citing Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden through step four of proving the existence and severity of the limitations her impairments cause and the fact that she cannot perform past relevant work; however, at step five, "the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functioning capacity[.]" Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625, 628 (6th Cir. 2016) (quoting Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004)).

The SSA can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. See Anderson v. Comm'r of Soc. Sec., 406 F. App'x 32, 35 (6th Cir. 2010); Wright v. Massanari, 321 F.3d 611, 615–16 (6th Cir. 2003). Otherwise, the grids only function as a guide to the disability determination. Wright, 321 F.3d at 615–16; see Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). Where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's prima facie case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through vocational expert testimony. Anderson, 406 F. App'x at 35; see Wright, 321 F.3d at 616 (quoting SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983)).

When determining a claimant's residual functional capacity ("RFC") at steps four and five, the SSA must consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B),

5

(5)(B); Glenn v. Comm'r of Soc. Sec., 763 F.3d 494, 499 (6th Cir. 2014) (citing 20 C.F.R. § 404.1545(e)).

### C. Weighing Medical Source Evidence

The administrative regulations implementing the Social Security Act impose standards on the weighing of medical source evidence. Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011). The significant deference accorded to the Commissioner's decision is conditioned on the ALJ's adherence to these governing standards. In Gentry v. Commissioner of Social Security, the Sixth Circuit re-stated the responsibilities of the ALJ in assessing medical evidence in the record in light of the treating source rule:

> Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings. 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 404.1512(b); 20 C.F.R. § 404.1513. The second is known as the "treating physician rule," see Rogers, 486 F.3d at 242, requiring the ALJ to give controlling weight to a treating physician's opinion as to the nature and severity of the claimant's condition as long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2) (language moved to 20 C.F.R. § 404.1527(c)(2) on March 26, 2012). The premise of the rule is that treating physicians have the best detailed and longitudinal perspective on a claimant's condition and impairments and this perspective "cannot be obtained from objective medical findings alone." 20 C.F.R. § 416.927(d)(2) (language moved to 20 C.F.R. § 416.927(c)(2) on March 26, 2012). Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors. Rogers, 486 F.3d at 242. In all cases, the treating physician's opinion is entitled to great deference even

> if not controlling. Id. The failure to comply with the agency's rules warrants a remand unless it is harmless error. See Wilson, 378 F.3d at 545–46.

741 F.3d 708, 723 (6th Cir. 2014).

The Sixth Circuit has also made clear that an ALJ may not determine the RFC by failing to address portions of the relevant medical record, or by selectively parsing that record—*i.e.*, "cherry-picking" it—to avoid analyzing all the relevant evidence. Id. at 724 (citing Minor v. Comm'r of Soc. Sec., 513 F. App'x 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); Germany-Johnson v. Comm'r of Soc. Sec., 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports.")). This is particularly so when the evidence ignored is from a treating physician. Ignoring medical evidence from a treating source in fashioning the RFC, without a proper analysis of why such action is taken, cannot be harmless error because it "undermines [the ALJ's] decision" to overlook evidence that could have potentially supported a more restrictive RFC or even a finding of disability. Gentry, 741 F.3d at 729 (citations omitted); Grubbs v. Comm'r of Soc. Sec., No. 12–14621, 2014 WL 1304716, at *2 (E.D. Mich. Mar. 31, 2014) ("The absence of a review of treatment records from a treating source and the lack of analysis of such made it impossible for the ALJ to properly assess whether the Plaintiff was disabled and/or whether Plaintiff had the residual functional capacity to do any work.").

### D. Buchanan's Statement of Errors

#### 1. The ALJ Erred by Failing to Find Buchanan's Cervical Degenerative Disc Disease a Severe Impairment.

Buchanan contends that the ALJ erred by finding, without explanation, that her cervical degenerative disc disease was not a severe impairment. (Doc. No. 15-1, at 9.) However, the

ALJ clarified that this was due to medical testing results. (A.R. 14.) The ALJ noted that Buchanan had surgery to treat spinal cord compression in September 2012 but returned in November 2012 with some residual complaints of arm pain. (Id.) However, the ALJ also noted that a post-surgery, thoracic MRI showed thoracic spondylosis at T2-3 on the left it was "not compressing her spinal cord" and "her imaging studies look fine and additional intervention is not necessary at this time." (Id. (citing A.R. 591).) Consequently, the ALJ did not fail to explain her reasons for her finding.

Moreover, even if she had, it is "legally irrelevant" that an impairment was determined to be nonsevere if the ALJ finds other severe impairments. McGlothin v. Comm'r of Soc. Sec., 299 F. App'x 516, 522 (6th Cir. 2008) (citing Anthony v. Astrue, 266 F. App'x 451, 457 (6th Cir. 2008)). "An ALJ's failure to find a severe impairment where one exists may not constitute reversible error where the ALJ determines that a claimant has at least one other severe impairment and continues with the remaining steps of the disability evaluation. This rule is predicated on the notion that the ALJ 'properly could consider claimant's [non-severe impairments] in determining whether claimant retained sufficient residual functional capacity to allow [him] to perform substantial gainful activity.'" Winn v. Comm'r Soc. Sec., 615 F. App'x 315, 326 (6th Cir. 2015) (quoting Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987)); see also Fisk v. Astrue, 253 F. App'x 580, 583 (6th Cir. 2007) (holding that an ALJ's failure to find an impairment severe at step two is not reversible error if the ALJ "considers all of a claimant's impairments in the remaining steps of the disability determination."); 20 C.F.R. § 404.1523 (stating that when making a disability determination, the Regulations require that if one severe impairment exists, the Commissioner "will consider the combined effect of all of your impairments without regard to whether any such impairment, if

considered separately, would be of sufficient severity."). Therefore the question is whether the ALJ considered these alleged impairments at other steps. Id. The Court finds that the ALJ did not.

**2. The ALJ Erred by Failing to Properly Consider and Evaluate the Opinion of Buchanan's Treating Neuro-Psychiatrist, Dr. Faiza Memon, and by Finding that Her Mental Impairments Were Not Severe.**

Buchanan presents these as two separate errors but the Court will address them together, as they are both related to her mental impairments. Specifically, Buchanan claims that "the ALJ simply did not provide the required 'good reasons' for discounting" Dr. Memon's opinion. (Doc. No. 15-1, at 11.) Buchanan also claims that the ALJ erred by relying "upon state agency reviewing doctors assessments that were rendered prior to Plaintiff commencing mental health treatment." (Doc. No. 15-1, at 14.)

The "treating physician rule," requires the ALJ to give controlling weight to a treating physician's opinion as to the nature and severity of the claimant's condition as long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors. Rogers, 486 F.3d at 242. Dr. Memon's opinion—contained in a one-page, hand-written letter dated March 25, 2013—states that Buchanan has "severe and ongoing" mental health symptoms with poor response to medical treatment" that cause "severe impairment in social and occupational functioning." (A.R. 755.)

At Step Two, the ALJ explained that she gave "little weight" to Dr. Memon's opinion because "the objective evidence of records contains no support for the statement made by Dr.

Memon" and Dr. Memon "had only seen the claimant on four occasions and the claimant missed several in between." (A.R. 16.) Instead, the ALJ accorded "greater weight to the opinions of state agency providers[,]" explaining that their "findings and opinions are much more consistent with the treatment notes and the claimant's own self-reports throughout the record." (Id. at 15–16.) The ALJ then went on to explain how she considered the four broad functional areas set out by the disability regulations for evaluating mental disorders and section 12.00C of the Listing of Impairments (20 C.F.R. Part 404, Subpart B, Appendix 1) based on Buchanan's October 2010 psychological examination. The ALJ noted that Buchanan did not seek any mental health treatment again until June 2012, nearly three years after the alleged onset of disability and, when she did seek treatment, did so sporadically, failing to make scheduled appointments both Dr. Memon and her providers at Centerstone and rendering it "difficult to determine whether the treatment was effective." (A.R. 15.)

As with Buchanan's first statement of error, this alleged error is premised on the notion that, had the ALJ accorded greater weight to Dr. Memon, she would have found Buchanan's mental impairments to be severe. However, at Step Two, the "ALJ's failure to find a severe impairment where one exists may not constitute reversible error where the ALJ determines that a claimant has at least one other severe impairment and continues with the remaining steps of the disability evaluation. This rule is predicated on the notion that the ALJ 'properly could consider claimant's [non-severe impairments] in determining whether claimant retained sufficient residual functional capacity to allow [him] to perform substantial gainful activity.'" Winn, 615 F. App'x at 326 (quoting Maziarz, 837 F.2d at 244; see also Fisk, 253 F. App'x at 583; 20 C.F.R. § 404.1523. Therefore the question is whether the ALJ considered these alleged impairments at other steps. Id. The Court finds that the ALJ did not.

3. **The ALJ Erred by Failing to Include Any Functional Limitations in the RFC for Buchanan's Pseudo-Seizures and Headaches.**

Buchanan claims that the ALJ's RFC does not provide for her pseudo-seizures and headaches which are well documented in the record because she did not account for Buchanan's "daily spells" and the time Buchanan would "be off task during a spell and its subsequent recovery period." (Doc. No. 15-1, at 13.) The ALJ included restrictions for pseudo-seizures that were "documented along with blackouts, involuntary movement, and decreased sensations" in Buchanan's medical record. (A.R. 20.) However, Buchanan cites to no objective evidence in the record—other than her own, subjective statements—to support her assertion that these spells resulted in a recovery period in which she would be "off task." (Doc. No. 15-1, at 13.) An RFC only includes credible functional limitations. See Poe v. Comm'r of Soc. Sec., 342 F. App'x 149, 155–56 (6th Cir. 2009) (citing 20 C.F.R. § 404.1545)). Moreover, where a party fails to cite to the administrative record in support of its argument, it is not the task of the Court to scour the record on that party's behalf. See Markel v. Comm'r of Soc. Sec., No. 13-11196, 2013 WL 5854467, at *3 (E.D. Mich. Oct. 30, 2013) (citing McPherson v. Kelsey, 125 F.3d 989, 995–96 (6th Cir.1997) ((("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to ... put flesh on its bones.") As Buchanan points to no objective medical evidence to support her assertion that her spells have a recovery period that presents functional limitations, the ALJ did not err in this regard.

4. **The ALJ Erred by Failing to Evaluate Buchanan's Obesity in Accordance with Social Security Ruling 02-1p, Despite Finding Obesity to be a Severe Impairment.**

Buchanan claims that, under Social Security Ruling ("SSR") 02-1p, the ALJ should have evaluated the effects of her obesity with her other impairments to determine if its effects on her

other impairments, limitations, and RFC were "greater than the effects of each of the impairments considered separately." (Doc. No. 15-1, at 14–16.) Buchanan does not claim any specific limitations as a result of her obesity. (Id.) After determining that Buchanan's obesity was a severe impairment (A.R. 13), the ALJ made no mention whatsoever of her obesity in determining her RFC and finding she had no exertional limitations (id. at 17–21).

The Sixth Circuit has held that SSR 02-1p does not "offer any particular mode of analysis for obese disability claimants." Bledsoe v. Barnhart, 165 F. App'x 408, 411–12 (6th Cir. 2006). However, SSR 02-1p instructs that

> Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.

SSR 02-1p(8). SSR 02-1p states that "[a] assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." Id. While the ALJ's omission of Buchanan's obesity in her discussion of the RFC determination may stem from a dearth of argument or evidence pertaining to same, the prescriptive language of SSR 02-1p with respect to the role an assessment of obesity plays in the RFC determination suggests that SSR 02-1p requires at least a cursory assessment of the role (or lack thereof) that obesity played in her RFC determination.

### IV. Recommendation

For the reasons explained above, Buchanan's Motion for Judgment on the Administrative Record (Docket No. 15) will be **GRANTED** and the case **REMANDED** pursuant to sentence

12

four of 42 U.S.C. § 405(g) to ensure that Buchanan's cervical degenerative disc disease and mental impairments are properly considered in conjunction with her other impairments in determining whether she had sufficient RFC to perform substantial gainful activity.

_____
KEVIN H. SHARP, CHIEF JUDGE
UNITED STATES DISTRICT COURT